**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

SILGAN WHITE CAP AMERICAS, LLC,  )
                               )
           Plaintiff,         )
                               )
          v.               )     Civil Action No. 08-939
                               )     Judge Nora Barry Fischer
ALCOA CLOSURE SYSTEMS and     )
ALCOA, INC.,                   )
                               )
          Defendants.     )

## <u>MEMORANDUM OPINION</u>

I.     INTRODUCTION

This action arises out of a dispute between Plaintiff Silgan White Cap Americas, LLC ("Plaintiff" or "Silgan") and Defendants Alcoa Closure Systems and Alcoa, Inc. (collectively "Alcoa" or "Defendants") regarding the parties' respective environmental liabilities at a manufacturing facility located in Richmond, Indiana. Silgan has brought claims against Alcoa under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613, for cost recovery and contribution from Alcoa for certain environmental clean up costs and also seeks a declaratory judgment regarding future costs. (Docket No. 1). Alcoa has filed a motion to dismiss these claims pursuant to Rule 12 of the Federal Rules of Civil Procedure. (Docket No. 18). Based on the following, Alcoa's motion is denied.

II.     FACTUAL BACKGROUND

A.     *Allegations in Silgan's Complaint*

The site at the center of this litigation is a manufacturing facility ("the facility") located in

1

Richmond, Indiana. (Doc. No. 1 ¶ 2). Alcoa, through its corporate predecessors, owned the facility from approximately 1947 to April 1, 1997. (Doc. No. 1 ¶ 15). Alcoa sold the facility to Silgan on April 1, 1997 pursuant to an Acquisition Agreement, which is further detailed below. (*Id*. at ¶ 16). Silgan alleges that "[h]azardous substances deriving from Alcoa's manufacturing operations were released or threatened to be released at or from" the facility, and that the Indiana Department of Environmental Management ("IDEM") has alleged that these hazardous substances are present in the groundwater and soil at the site and have migrated off-site to adjoining property via groundwater. (*Id*. at ¶¶ 17, 19). The hazardous substances included volatile organic compounds, semi-volatile organic compounds, certain metals, polycholorinated biphenyls and petroleum. (*Id*. at ¶ 18). These substances were contained in approximately nineteen underground storage tanks at the facility, arranged in two clusters. (*Id*. at ¶ 20). Silgan avers that unauthorized releases from tanks in both clusters resulted in documented soil and groundwater contamination as early as 1986. (*Id*. at ¶ 6).

Silgan also alleges that "[s]hortly after Alcoa sold the Facility to Silgan, Alcoa entered the Indiana Voluntary Remediation Program ("VRP") and agreed to undertake investigation and necessary cleanup of the soil and groundwater contamination at the Site." (*Id*. at ¶ 21). However, Silgan maintains that Alcoa did not submit a site investigation report or prepare a remedial work plan acceptable to IDEM for a period of nine (9) years after entering into the program. (*Id*.). Silgan further avers that Alcoa's initial work plan submitted in June of 2000 was rejected by IDEM "due to significant deficiencies." (*Id*.). As a consequence, Silgan contends that Alcoa "failed to institute any remedial action to remove any potential sources of contamination emanating from the Site during this nine year period" and that Silgan undertook its own actions to remediate the Site including submitting a Proposed Interim Remedial Action Plan to IDEM on November 13, 2006.

(*Id*.). Silgan and IDEM engaged in certain correspondence regarding the Proposed Plan and on February 9, 2007, an administrative settlement was reached which Silgan alleges that their agreement "provides for the performance of response work by Silgan and reimbursement of response costs incurred by IDEM at or in connection with the releases of hazardous substances and petroleum at or from the Facility." (*Id*. at ¶¶ 24-26). Pursuant to this settlement,

> Silgan agreed to undertake certain specific activities with respect to the Site, including but not limited to, the following: (1) development of a Further Site Investigation ("FSI") Work Plan in accordance with IDEM's January 20, Letter; (2) implementation of the FSI Work Plan once it has received IDEM's approval; (3) development of a Feasibility Study, if requested by IDEM; (4) development and implementation of a Remediation Work Plan ("RWP"), once it has received IDEM's approval; (5) submittal of a RWP Completion Report once the RWP has been implemented; (6) performance of any additional work deemed necessary by IDEM based on the approved RWP and the Completion Report; (7) recording and adherence to an IDEM-approved environmental restrictive covenant; (8) maintenance of any corrective measures or institutional controls; and (9) payment of IDEM's response costs.

(*Id*. at ¶ 28). Finally, Silgan avers that it has expended certain costs in undertaking these actions, claiming it has spent in excess of $500,000. (*Id*. at 29).

Given this background, Silgan asserts the following three[1] causes of action against Alcoa under CERCLA: (1) a claim seeking recovery of response costs from Alcoa pursuant to section

---

[1] The Court notes that Silgan's Complaint also contained causes of action for costs of removal and remediation under the Indiana Environmental Legal Actions Statute, Ind. Code Sections 13-30-9 *et seq*., and contribution under the Indiana Underground Storage Tanks Act, Ind. Code Section 13-23-13-8(b). (Docket No. 1 at ¶ 1). Silgan filed a consent motion requesting that these claims be dismissed, without prejudice, (Docket No. 81), and Silgan's motion was granted by the Court. on September 29, 2008. (Docket No. 82; *see also* Docket No. 89 at 25-26).

107(a), 42 U.S.C. § 9607(a)[2]; (2) a claim seeking contribution from Alcoa under section

2

Section 107(a) provides as follows:

> Notwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section--
> (1) the owner and operator of a vessel or a facility,
> (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
> (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and
> (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for--
>
> > (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> > (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan;
> > (C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release; and
> > (D) the costs of any health assessment or health effects study carried out under section 9604(i) of this title.
>
> The amounts recoverable in an action under this section shall include interest on the amounts recoverable under subparagraphs (A) through (D). Such interest shall accrue from the later of (i) the date payment of a specified amount is demanded in writing, or (ii) the date of the expenditure concerned. The rate of interest on the outstanding unpaid balance of the amounts recoverable under this section shall be the same rate as is specified for interest on investments of the Hazardous Substance Superfund established under subchapter A of chapter 98 of Title 26. For purposes of applying such amendments to interest under

113(f)(3)(B), 42 U.S.C. § 9613(f)(3)(B)[3], for the costs incurred by Silgan in responding to the release and/or threatened release of hazardous substances at the site; and (3) a declaratory judgment that Alcoa is "liable for all or a portion of the costs incurred or paid, and to be incurred or paid, by Silgan, at, on, near, from, or in connection with the Site" pursuant to section 113(g), 42 U.S.C. § 9613(g)(2)[4]

---

> this subsection, the term "comparable maturity" shall be determined with reference to the date on which interest accruing under this subsection commences.

42 U.S.C. § 9607(a).

[3]

Section 9613(f)(3)(B) provides as follows:

> (3) Persons not party to settlement
>
> ...
>
> (B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

42 U.S.C. § 9613(f)(3)(B).

[4]

Section 9613(g)(2) provides, in pertinent part, that:

> (2) Actions for recovery of costs
>
> ...
>
> In any such action described in this subsection, the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages. A subsequent action or actions under section 9607 of this title for further response costs at the vessel or facility may be maintained at any time during the response action, but must be commenced no later than 3 years after the date of completion of all response action. Except as otherwise provided in this paragraph, an action may be commenced under section 9607 of this title for recovery of costs at any time after such costs have been incurred.

and 28 U.S.C. § 2201.[5]

B.    *Acquisition Agreement*

Pursuant to the sale of the facility from Alcoa ("Seller") to Silgan ("Buyer"), the parties

entered into an Acquisition Agreement dated April 1, 1997.  (Docket No. 19-2).  The Agreement

provides that Silgan agreed to purchase certain Assets[6] from Alcoa on an "AS IS, WHERE IS" basis

for a total purchase price of $17,002,480, plus interest.  (*Id.*, §§ 2.1, 2.2).  In addition, Silgan agreed

to assume certain Assumed Liabilities[7] as defined therein and the parties agreed that: "other than the

Assumed Liabilities, the Buyer shall not assume or be responsible for, and the Seller shall retain and

---

42 U.S.C. § 9613(g)(2).

[5]

28 U.S.C. 2201 provides, in pertinent part, as follows:

> (a) In a case of actual controversy within its jurisdiction ... any court
> of the United States, upon the filing of an appropriate pleading, may
> declare the rights and other legal relations of any interested party
> seeking such declaration, whether or not further relief is or could be
> sought. Any such declaration shall have the force and effect of a final
> judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

[6]

As defined in the Agreement, "Assets" "means all of the assets of Seller of every kind,
character and description, tangible or intangible, real or personal (other than the Excluded Assets)
utilized in the Richmond Business or located at Seller's Richmond, Indiana facility, including,
without limitation, those assets identified on Schedule 1.1(a) to this Agreement."  (Docket No. 19-2
at 2).  The Court notes that Schedule 1.1(a) referenced therein is neither attached to the Agreement
nor filed of record in this matter.

[7]

As defined in the Agreement, "Assumed Liabilities" "means those obligations of Seller being
assumed by Buyer pursuant to this Agreement, as identified on Schedule 1.1(b) hereto."  (Docket
No. 19-2 at 2).  The Court notes that Schedule 1.1(b) referenced therein is neither attached to the
Agreement nor filed of record in this matter.

remain responsible for, any and all obligations and liabilities of the Seller of any nature whatsoever, whether past, current or future, whether accrued, contingent, known or unknown." (*Id*. at § 2.1(b)).

The Agreement also contains two comprehensive indemnification provisions, at Articles XII, titled "Environmental Matters" and XIV, titled "Survival of Representations and Warranties; Indemnification." (*Id*. at art. XII, XIV). Section 14.7 delineates between the indemnification provisions in the two Articles, requiring that all claims related to environmental matters be governed by the indemnification provisions contained within Article XII. (*Id*. at § 14.7). Specifically, section 14.7 provides:

> Section 14.7. <u>Distinct from Article XII</u>. Notwithstanding anything contained in this Article XIV, all claims for indemnification arising out of or related to environmental matters shall be solely covered by and subject to Article XII and the limitations set forth therein. The limitations, rights, and remedies contained in this [Article] XIV are distinguished from and in addition to those separately provided in Article XII.

(*Id*.). Pursuant to section 12.6, the parties generally agreed that Alcoa would indemnify and save Silgan from and against any and all "Pre-Closing Environmental Liabilities"[8] and Silgan would

---

[8] Pursuant to section 12.2(e):

> "Pre-Closing Environmental Liabilities" means all liabilities, obligations, responsibilities, losses, damages, deficiencies, damages, costs of Cleanup, other costs and expenses (including without limitation reasonable and necessary fees of counsel, expert and consulting fees and costs of investigations and feasibility studies), fines, penalties, restitutions and monetary sanctions (including injury to property or person) sustained, incurred or required to be paid as a result of, based upon or arising out of any claim, demand, cause of action, suit, order, judgment, citation, notice of violation or consent decree, whether based on contract, tort or any Applicable Law, relating to any (i) Cleanup of Hazardous Substances that are or were at, upon, in, under or emanating from the Real Property prior to the

indemnify and save Alcoa from and against any and all "Post-Closing Environmental Liabilities."[9]

---

> Closing (and after the Closing if the Release of such Hazardous Substance first occurred prior to the Closing and was continuing at or about the time of the Closing), which Cleanup is required pursuant to any Applicable Law or by a governmental agency, judicial authority or other third party, (ii) Cleanup of Hazardous Substances Released at any other location if such Hazardous Substances were generated, stored, disposed of, recycled, Released, used or transported, by or on behalf of Seller or ALCOA prior to the Closing, or (iii) any noncompliance with any Applicable Law by Seller or ALCOA prior to the Closing. Pre-Closing Liabilities shall not include costs incurred by Buyer or Silgan to investigate, cleanup, remediate or improve the Real Property or assets on the Real Property if such investigation, cleanup, remediation or improvement is not required by Applicable Law or governmental mandate or order.

(Docket No. 19-2 at § 12.2(e)).

[9]

Section 12.2(f) provides:

> (f) "Post-Closing Environmental Liabilities" means all liabilities, obligations, responsibilities, losses, damages, deficiencies, damages, costs of Cleanup, other costs and expenses (including without limitation reasonable and necessary fees of counsel, expert and consulting fees and costs of investigations and feasibility studies), fines, penalties, restitutions and monetary sanctions (including injury to property or person) sustained, incurred or required to be paid as a result of, based upon or arising out of any claim, demand, cause of action, suit, order, judgment, citation, notice of violation or consent decree, whether based on contract, tort or any Applicable Law, relating to any (i) Cleanup of Hazardous Substances at, upon, in, under or emanating from the Real Property after the Closing (provided that the Release of such Hazardous Substances did not occur prior to the Closing or was continuing at or about the time of the Closing), which Cleanup is required pursuant to any Applicable Law or by a governmental agency, judicial authority or other third party, (ii) Cleanup of Hazardous Substances Released at any other location if such Hazardous Substances were generated, stored, disposed of, recycled, Released, used or transported, by or on behalf of Buyer after the Closing, or (iii) any noncompliance with any Applicable Law by Buyer after the Closing; provided that Buyer's

(*Id*. at 12.6(a)-(b)). Those terms are specifically defined to require indemnification for liabilities arising from any Applicable Law,[10] including CERCLA, 42 U.S.C. §§ 9601 *et seq*.   (*Id*. at §§ 12.2(d), (e), (f)).   In addition, Alcoa agreed to be responsible for the completion of certain remedial actions specified in the Agreement and indemnify Silgan for any liabilities arising from its completion of same including, *inter alia*, the investigation, identification and cleanup of PCBs, abatement of certain previously identified materials containing asbestos, as well as the preparation and filing of required toxic release inventory forms.   (*Id*. at 12.6(c).   The parties' respective indemnification obligations are subject to the procedures and limitations set forth in sections 12.7 and 12.8, which provide that:

> Section 12.7.   <u>Procedures</u>.
>
> (a)   The obligations of Seller and/or ALCOA to indemnify Buyer Indemnitees pursuant to Section 12.6(a) above shall be in effect only with respect to claims for indemnification made in writing thereunder from the Closing through the tenth (10th) anniversary of the Closing.

---

> noncompliance was not the result of, or arising out of, Seller's Pre-Closing Environmental Liabilities.

(Docket No. 19-2 at § 12.2(f)).

[10]

> (d) "Applicable Law" shall mean any and all laws concerning the protection of human health and the environment which shall include, but not be limited to, applicable common law, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 et seq.; ... as amended from time to time, together with the rules and regulations promulgated thereunder, together with any and all federal, state, and local environmental laws, rules, ordinances, or regulations analogous to the above-listed laws.

(Docket No. 19-2 at § 12.2(d)).

(b)   The party from whom indemnification is sought pursuant to this Article XII shall have the right to participate and undertake responsibility for any Cleanup for any Pre-Closing Environmental Liabilities or Post-Closing Environmental Liabilities as the case may be, provided that such Cleanup is undertaken and completed as approved by an appropriate governmental agency or judicial authority in accordance with all Applicable Laws and/or programs determined therefor by such appropriate governmental agency.   For purposes hereof, the Buyer hereby agrees to enter into such agreements with Seller, on reasonable terms and conditions, to provide access to Seller to the Real Property.

Section 12.8.   Limitations.   Except as provided in Section 12.6 above, any claim by a Buyer Indemnitee for indemnification pursuant to Section 12.6(a) hereof shall be limited as follows: (i) Buyer Indemnitees shall not be entitled to indemnification under Section 12.6(a) hereof unless and until all claims for indemnification in the aggregate made by all Buyer Indemnitees exceed $300,000, in which event Buyer Indemnitees shall be entitled to indemnification for all claims for indemnification under Section 12.6(a) hereof; and (ii) the maximum amount recoverable by all Buyer Indemnitees for indemnification for claims under Section 12.6(a) hereof shall not exceed $15,000,000.

(*Id*. at §§ 12.7, 12.8).

Further, the parties agreed that Delaware law would apply to the construction and/or interpretation of the Agreement and that "any dispute arising out of or relating to this agreement and the transactions contemplated hereby" would be litigated in the federal or state courts located in the Western District of Pennsylvania.   (*Id*. at § 16.7).   The parties specified that they were to attempt to informally resolve any disputes regarding the Agreement prior to bringing a lawsuit, but that engaging in this process would not limit any other available remedies.[11]   (*Id*. at § 16.6).   Likewise,

_____

[11]

The Court notes that counsel represented to the Court during oral argument that, pursuant to section 16.6 of the Agreement, the parties engaged in informal discussions including meeting in Chicago in an attempt to mediate the dispute prior to the filing of the instant lawsuits.  (Docket No. 89 at 24, 30).

section 16.14, titled Remedies, states the following:

> Section 16.14. <u>Remedies</u>. Each of the parties to this Agreement is entitled to all remedies in the event of breach provided at law or in equity, specifically including, but not limited to, specific performance, but only to the extent permitted under, and subject to the limitations set forth in Articles XII and XIV.

(Docket No. 19-2).

III.    PROCEDURAL HISTORY

A.      *Alcoa's State Action*

Prior to Silgan's filing of the instant lawsuit, on March 7, 2007, Alcoa[12] instituted an action in the Court of Common Pleas of Allegheny County against Silgan[13] seeking a declaratory judgment or, in the alternative, specific performance, as well as damages and indemnification based upon the Agreement. (Docket No. 19-3). In that suit, Alcoa alleges that Silgan's actions in voluntarily undertaking the environmental cleanup at the facility and preventing Alcoa from accessing the facility to engage in clean up activities constitutes a breach of the Agreement. (*Id.*). Alcoa seeks the following relief: (1) a declaratory judgment that Silgan breached section 12.7(b)[14] of the Agreement including the right to participate in remediation efforts, and the right to access the site; requesting that Alcoa be released from its indemnification and other obligations under the Agreement; (2) a declaratory judgment that any and all violations of "Applicable Laws," as defined in the Agreement,

---

[12]

The plaintiffs in the state action are Alcoa Closure Systems International, Inc. and Alcoa, Inc. (Docket No. 19-3).

[13]

The defendants in the state action are Silgan Holdings, Inc. and two of its subsidiaries, Silgan White Cap Americas LLC, and Silgan Containers Corporation. (Docket No. 19-3).

[14]

*See* § II(B) *supra*.

caused by Silgan's denial of access to the facility constitute "Post-Closing Environmental Liabilities" under the Agreement, and that Silgan is required to indemnify Alcoa for any "Post-Closing Environmental Liabilities;" (3) specific performance under the Agreement requiring Silgan to grant Alcoa access to the site to enable it to engage in environmental clean up activities; (4) breach of contract alleging that Silgan failed to satisfy the procedural requirements of section 12.7(b) of the Agreement; (5) breach of contract alleging that Silgan materially breached section 12.8[15] of the Agreement by failing to reimburse Alcoa for $300,000 of remediation work; and (6) a declaratory judgment providing indemnification for claims arising from the alleged breach. (Docket No. 19-3).

Silgan filed its Answer, New Matter and Counterclaims against Alcoa on May 1, 2007. (Docket No. 19-4). Silgan denies liability for Alcoa's claims, asserts several defenses to said claims and raises the following counterclaims: (1) a declaratory judgment action that Alcoa is required to indemnify Silgan from and against all "Pre-Closing Environmental Liabilities" pursuant to the Agreement; (2) a claim for general and punitive damages for an alleged breach of the implied covenant of good faith and fair dealing; and (3) a claim for damages for an alleged breach of fiduciary duty. (*Id.*). In addition, it is this Court's understanding that Silgan has been granted leave in the state action to amend its answer to assert as counterclaims its Indiana statutory claims that were previously dismissed from this action. *Alcoa Closure Sys., Inc. et al. v. Silgan Alcoa Inc.*, GD No. 07-4820, Order of Court issued on Nov. 24, 2008. As of this writing, the Allegheny County Court of Common Pleas action remains in discovery, the period for which is currently set to conclude on May 27, 2009. *Id.*, Order of Court issued on Feb 17, 2009.

---

[15] *See* § II(B) *supra*.

B.   *Silgan's Federal Action*

With the state action ongoing, Silgan filed its Complaint against Alcoa in the United States District Court for the Southern District of Indiana on November 29, 2007. (Docket No. 1). On December 21, 2007, Alcoa responded by filing several motions. First, Alcoa filed a Motion to Dismiss for Improper Venue, or Alternatively, Transfer Venue to the Western District of Pennsylvania. (Docket No. 16). Second, Alcoa filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket No. 18). Third, Alcoa filed a Motion to Disqualify Counsel. (Docket No. 20). Silgan filed responses to Alcoa's motions on January 30, 2008. (Docket Nos. 33, 37, 38). In turn, Alcoa filed reply briefs in support of its motions on February 11, 2008. (Docket Nos. 42, 43, 44). Silgan further responded with a Motion to Strike portions of Defendant's Reply in Support of the Motion to Disqualify on February 13, 2008, and a Motion to Strike Defendant's Supplemental Designation of Evidence on May 13, 2008. (Docket Nos. 45, 52).

On July 3, 2008, the United States District Court for the Southern District of Indiana issued a Memorandum Order in which it denied Alcoa's motion to dismiss for improper venue, but granted its motion to transfer venue to the United States District Court for the Western District of Pennsylvania. (Docket No. 54). Pursuant to that Order, the action was transferred to this Court on July 7, 2008. (Docket No. 55). After the matter was transferred, this Court ordered the parties to file supplemental briefs regarding Alcoa's Motion to Dismiss on August 20, 2008. (Docket No. 63). Alcoa's Motion to Disqualify Counsel, and Silgan's Motions to Strike, were denied as moot on September 8, 2008. (Docket No. 66). A status conference was held on September 8, 2008, and a

case management order was issued, setting discovery deadlines.[16]  (Docket No. 67, 72).

Upon request of the parties, the Court heard argument as to the motion to dismiss on September 24, 2008.  (Docket No. 78, 89).  At the hearing, the parties were ordered to brief additional issues pertaining to Alcoa's motion to dismiss.  (Docket Nos. 79, 89).  Specifically, the Court ordered that the parties brief the following: (1) the applicability of Delaware law to the indemnity agreement; (2) the potential abstention and/or stay of proceedings given the relief sought; and (3) the effect, if any, of the ruling made by the Honorable Larry J. McKinney in the Memorandum Opinion transferring venue to this Court.[17]  (Docket No. 79).  Alcoa filed its post-conference brief in support of its motion to dismiss on October 10, 2008, while Silgan filed its corresponding brief in opposition to the motion to dismiss on October 22, 2008.  (Docket Nos. 85, 86).  Subsequently, Alcoa filed a reply to Silgan's post-conference brief on October 29, 2008 and Silgan responded with a sur-reply brief on November 11, 2008. (Docket Nos. 90, 92).[18]

---

[16]

This Court has held the discovery deadlines in abeyance pending the resolution of Alcoa's motion to dismiss.  (Docket No. 95).

[17]

The parties participated in mediation on November 19, 2008 before Mark Nowak, Esquire and reported that the mediation was unsuccessful on November 25, 2008.  (Docket No. 94).

[18]

Silgan has also filed several requests for judicial notice in support of its opposition to Alcoa's motion to dismiss.  (Docket Nos. 87, 88, 91).  In said filings, Silgan requests that the Court take judicial notice of pleadings filed by the parties in an administrative proceeding before the Indiana Office of Environmental Adjudication pursuant to Rule 201 of the Federal Rules of Evidence. (*Id*.). Alcoa filed a response to these requests, arguing that the filings were made outside of the Court's briefing schedule and actually support its motion to dismiss.  (Docket No. 93).  In this Court's estimation, the pleadings referenced by Silgan contain argument of counsel, do not constitute "adjudicative facts" under Rule 201 and are not relevant to the resolution of the pending motion. FED.R.EVID. 201.  Accordingly, the Court did not place weight on these filings in ruling on Alcoa's motion to dismiss.

IV.     ALCOA'S MOTION TO DISMISS

A.     *Standard of Review*

Alcoa has moved to dismiss Silgan's claims under both Rule 12(b)(1) and 12(b)(6) of the

Federal Rules of Civil Procedure.  When the movant invokes multiple bases in support of a motion

to dismiss, the court first considers the Rule 12(b)(1) challenge because all other defenses will

become moot if the court must dismiss the complaint for lack of subject matter jurisdiction.  *See In*

*re Corestates Trust Fee. Litig*., 837 F. Supp. 104, 105 (E.D. Pa. 1993).  With respect to Alcoa's

motion under Rule 12(b)(1), the "legal insufficiency of a federal claim generally does not eliminate

the subject matter jurisdiction of a federal court,"*Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 261

(3d Cir. 2008)(quoting *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1280 (3d

Cir.1993)), except "where the alleged claim under the Constitution or federal statutes clearly appears

to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is

wholly insubstantial and frivolous."  *Id*. (quoting *Bell v. Hood*, 327 U.S. 678, 682-83 (1946)).  The

Court finds that Silgan's CERCLA claims are not wholly insubstantial or frivolous and that Alcoa's

arguments advanced in its motion challenge not this Court's jurisdiction but the merits of Silgan's

claims.  Accordingly, Alcoa's motion is properly analyzed under the standard applicable to a motion

to dismiss under Rule 12(b)(6).

A complaint may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if it does

not allege "enough facts to state a claim to relief that is plausible on its face."  *Phillips v. County of*

*Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  This standard requires more than "a formulaic recitation of the elements of a cause of

action."  *Twombly*, 550 U.S. at 555.  The complaint must allege a sufficient number of facts "to raise

a right to relief above the speculative level." *Id.*  This requirement is designed to facilitate the notice pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires "a short and plain statement of [a] claim *showing that the pleader is entitled to relief.*"  FED. R. CIV. P. 8(a)(2)(emphasis added).

In considering a motion to dismiss, a court accepts all of the plaintiff's allegations as true and construes all inferences drawn from those allegations in the light most favorable to the plaintiff. *Buck v. Hampton Township School District*, 452 F.3d 256, 260 (3d Cir. 2006).  Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments.  *Morse v. Lower Merion School District*, 132 F.3d 902, 906, n. 8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint.  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).  The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 326-327 (1989).  In addition to the allegations contained in the complaint, a court may consider matters of public record, exhibits attached to the complaint, and other items appearing in the record of the case.  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384, n. 2 (3d Cir. 1994).  Further, "[a] 'court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir. 2008) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

B.      *Analysis*

Silgan's claims for cost recovery and contribution arise under federal law, *i.e.,* CERCLA.

Alcoa maintains that said claims are barred by the Acquisition Agreement, arguing that contractual indemnification is the sole and exclusive remedy pursuant to which Silgan can enforce its environmental claims against Alcoa. (Docket No. 19 at 5).

"The purpose of CERCLA is 'to assure that the current and future costs associated with hazardous waste facilities, including post-closure costs, will be adequately financed and, to the greatest extent possible, borne by the owners and operators of such facilities.'" *E.I. DuPont de Nemours and Co. v. United States*, 508 F.3d 126, 135 (3d Cir. 2007)(quoting *Horsehead Industries, Inc. v. Paramount Communications, Inc.*, 258 F.3d 132, 135 (3d Cir.2001)). The United States Court of Appeals for the Third Circuit has recognized that "questions of CERCLA liability and the interpretation of any indemnification agreement among the parties liable for the clean-up are inextricably related." *Horsehead*, 258 F.3d at 143 (quoting *GNB Battery Technologies, Inc. v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir.1995)). Pursuant to 42 U.S.C. 9607(e)(1),[19] the parties to an indemnification agreement "remain jointly and severally liable for cleanup responsibility" to the government under CERCLA but can allocate "the costs for cleanup via indemnification agreements." *Id*. (citing *SmithKline Beecham Corp., v. Rohm and Haas Co., et al.*, 89 F.3d 154, 158 (3d Cir.1996)

---

[19]

Section 9607(e)(1) provides that:

> No indemnification, hold harmless, or similar agreement or conveyance shall be effective to transfer from the owner or operator of any vessel or facility or from any person who may be liable for a release or threat of release under this section, to any other person the liability under this section. Nothing in this subsection shall bar any agreement to insure, hold harmless, or indemnify a party to such agreement for any liability under this section.

42 U.S.C. § 9607(e)(1).

which cited *Beazer East, Inc., v. Mead Corp.,* 34 F.3d 206, 211 (3d Cir.1994)). As a result, "statutory liability under CERCLA endures even if contractual liability is later determined to be non-existent." *Id.* (quoting *GNB Battery Technologies, Inc., v. Gould, Inc.*, 65 F.3d 615, 621 (7th Cir.1995)). "Although federal law underlies the cause of action, state law applies to interpreting a contract that affects CERCLA liability." *Caldwell Trucking PRP v. Rexon Technology Corp.*, 421 F.3d 234, 241 (3d Cir. 2005)(citing *United States v. USX Corp.*, 68 F.3d 811, 826 n.30 (3d Cir. 1995); *Beazer East, Inc. v. Mead Corp.*, 34 F.3d 206, 215 (3d Cir. 1994)).

Alcoa argues that the decision by the United States Court of Appeals for the Third Circuit in *Horsehead Industries, Inc. v. Paramount Communications*, 258 F.3d 132 (3d Cir. 2001) is analogous to this case and its application warrants dismissal of Silgan's claims. (Docket No. 85 at 2-5). Silgan maintains that the decision in *Horsehead* is distinguishable. In *Horsehead*, the Court of Appeals found that a state court judgment which required an indemnitor, Horsehead, to contractually indemnify Paramount, the indemnitee, "for all environmental costs arising from Horsehead's purchase of certain Paramount operations" precluded Horsehead from bringing contribution claims for response costs under CERCLA in a federal action against Paramount under the doctrine of collateral estoppel. *Horsehead*, 258 F.3d at 134. The Court of Appeals, applying New York law to interpret the parties' contractual agreement, found that the scope of the agreement included CERCLA liability costs and that the issues between the state court judgment and the federal proceedings were identical. *Id* at 143-147. As the state court had found that Horsehead had agreed to indemnify Paramount for all environmental losses pursuant to the parties' agreement, including response costs, the Court of Appeals determined that Horsehead was precluded from bringing a contribution claim against Paramount to recover the response costs. *Id*.

*Horsehead* is distinguishable from this case in several respects.  First, although there is an ongoing state proceeding, that proceeding remains in discovery and there has been no judgment awarded to either party, making inapplicable the claim preclusion discussion.  Second, pursuant to the Agreement between Silgan and Alcoa, Alcoa agreed to indemnify Silgan for all "Pre-Closing Liabilities," as that term is defined in the Agreement. In this federal action, Silgan, the indemnitee regarding pre-closing liabilities, seeks to recover response costs and contribution from Alcoa, the indemnitor.  Therefore, the roles of the parties in this action are reversed from the parties in *Horsehead*.  While the reasoning of *Horsehead* may potentially apply to bar Alcoa, which agreed to indemnify Silgan for all "Pre-Closing Environmental Liabilities," from bringing CERCLA claims against Silgan, the opposite is not true, absent an agreement by the parties that indemnification is the sole and exclusive remedy under the contract, which, as discussed below, is not present.  Third, *Horsehead* was decided under New York law, which is not applicable to the instant matter.

Silgan and Alcoa agreed in Article XVI, §16.7 of the Agreement that it is to be governed by the laws of the state of Delaware. (Doc. No. 19-2 at 38).  Neither party has contested the application of Delaware law, and "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Smith v. Commonwealth Nat. Bank*, 384 Pa.Super. 65, 557 A.2d 775, 777 (1989), *appeal denied*, 524 Pa. 610, 569 A.2d 1369 (1990)).  As such, the Court will apply Delaware law to interpret the Agreement.

Under Delaware law, contracts should be construed in whole in order to give effect to the intentions of the parties. *E.I. duPont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985).  Where the contract is clear and unambiguous, the intent of the parties is

determined by giving language its ordinary and usual meaning at the time the agreement was made. *See Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992), *See also Lorillard Tobacco Co. v. American Legacy Found*, 903 A.2d 728, 740 (Del. 2006) (courts must apply the plain meaning of unambiguous terms in a contract as the parties would have agreed ex ante), *accord Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1021-22 (Del. 2001). "[I]t is presumed that the language of a contract governs when no ambiguity exists" and "[t]his presumption ... holds even greater force when ... the parties are sophisticated entities that bargained at arm's length." *Progressive Intern. Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *7 (Del.Ch. July 9, 2002). Courts may consider extrinsic evidence to aid in the interpretation of a contract only where the contract is ambiguous on its face. *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. 1991). "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc*, 616 A.2d at 1196.

Alcoa maintains that pursuant to sections 14.7 and 16.6 of the Agreement, indemnification under Article XII is the sole and exclusive remedy that Silgan can pursue against it to recover for alleged environmental liabilities at the Richmond facility. Silgan counters that indemnification is not the sole and exclusive remedy available to it, but only a single remedy which can be pursued according to the terms and conditions of the Agreement. Delaware courts recognize that "[a]lthough the parties may, in their contract, specify a remedy for a breach, that specification does not exclude other legally recognized remedies. An agreement to limit remedies must be clearly expressed in the contract." *Interim Healthcare, Inc. v. Spherion Corp.*, 884 A.2d 513, 549 (Del.Super. 2005)(citing 17A AM.JUR. 2D CONTRACTS § 709 (2004); *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 336

A.2d 211, 214 (Del.1975)); *See also Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817

A.2d 160, 175 (Del.Supr. 2002)(quoting *Oliver B.*, 336 A.2d at 214)("courts will not construe a

contract as taking away other forms of appropriate relief, including equitable relief, unless the

contract explicitly provides for an exclusive remedy" and "even if a contract specifies a remedy for

breach of that contract, 'a contractual remedy cannot be read as exclusive of all other remedies [if]

it lacks the requisite expression of exclusivity'").  The Court now turns to the applicable provisions

to determine whether an action for contractual indemnification is the sole and exclusive remedy

under the Agreement.

The crux of Alcoa's argument relies on section 14.7 of the Agreement, which provides that:

> Notwithstanding anything contained in this Article XIV, *all claims for indemnification arising out of or related to environmental matters shall be solely covered by and subject to Article XII and the limitations set forth therein.*  The limitations, rights, and remedies contained in this [Article] XIV are distinguished from and in addition to those separately provided in Article XII.

(Docket No. 19-2 at 36 (emphasis added)).  Article XII, titled Environmental Matters, contains an

extensive indemnification provision at section 12.6 wherein Alcoa agreed to indemnify Silgan for

all "Pre-Closing Environmental Liabilities," including, in part:

> all liabilities, obligations, responsibilities, losses, damages, deficiencies ... costs of Cleanup, other costs and expenses ... fines, penalties, restitutions and monetary sanctions ... sustained, incurred or required to be paid as a result of, based upon or arising out of any claim, demand, cause of action, suit, order, judgment, citation, notice of violation or consent decree, whether based on contract, tort, or any Applicable Law.

(Docket No. 19-2 at § 12.2(e)).  As defined in the Agreement, Applicable Law includes liabilities

arising under CERCLA, 42 U.S.C. §§ 9601 *et seq.*  (*Id.* at 12.2(d)).  Alcoa maintains that these

provisions operate in concert to provide the exclusive remedy under the Agreement for Silgan to recover for its alleged CERCLA claims of cost recovery and contribution against Alcoa. Alcoa further contends that section 16.6 supports their position. Section 16.6 provides, in relevant part, that:

> Any dispute arising out of or relating to this Agreement, including its validity, interpretation, application, scope, enforceability, performance, breach, and termination, shall be resolved first by consultation between the parties. If any dispute cannot be so resolved, *the parties shall be entitled to pursue any remedies available to them, in law or in equity, but only to the extent permitted under, and subject to the limitations set forth in, Articles XII and XIV*.

(Docket No. 19-2 at § 16.6 (emphasis added)).

In this Court's estimation, the language of the Agreement quoted by Alcoa is insufficient to create an exclusive remedy of indemnification under Delaware law and to preclude Silgan's CERCLA claims in this action. *See Interim Healthcare*, 884 A.2d at 549; *Gotham Partners*, 817 A.2d at 176. There is no clear expression of the parties' intention to create such an exclusive remedy in the Agreement, and the provisions cited by Alcoa, at best, provide only a specific remedy for breach, which is insufficient to create an exclusive contractual remedy under Delaware law.[20] *Id*. The parties agreed in section 14.7 that "*all claims for indemnification*" shall be covered by the provisions of Article XII and in section 16.6 that "the parties shall be entitled to pursue any remedies

---

[20]

The Court notes that both Alcoa and Silgan are sophisticated entities incorporated under the laws of Delaware and should be intimately familiar with Delaware laws of contract construction and interpretation. (Docket No. 1 at ¶¶ 10, 11). Accordingly, if the parties' true intent was to limit the remedy for environmental claims to an action under the indemnification provision in the Agreement, the representatives of each company that drafted and/or negotiated the terms and conditions of the Agreement should have been aware of the requirements under Delaware law to ensure that such intent was incorporated into the specific terms and conditions of the Agreement.

available to them ... but only to the extent permitted under, and subject to the limitations set forth in, Articles XII and XIV." (Docket No. 19-2 at §§ 14.7, 16.6). Therefore, applying the plain and ordinary meaning to this language as required under Delaware law, the parties agreed that to the extent that *an indemnification claim* was made by either party, it would be governed by the specific terms and conditions set forth in Article XII. These sections do not expressly preclude Silgan from pursuing any other remedies, including the CERCLA claims advanced in this action. Alcoa's position is further belied by section 16.7, titled Remedies, which provides that:

> *Each of the parties to this Agreement is entitled to all remedies in the event of breach provided at law or in equity*, specifically including, but not limited to, specific performance, *but only to the extent permitted under, and subject to the limitations set forth in Articles XII and XIV*.

(Docket No. 19-2 at § 16.7 (emphases added)). This section states in plain terms that all remedies are available to either party to rectify a breach of the Agreement, except as set forth or limited by Articles XII and XIV, both of which pertain only to indemnification claims. A finding that indemnification is the sole and exclusive remedy under the Agreement would contravene the plain language of this unambiguous provision. Given that the Agreement was negotiated at arm's length between two sophisticated entities, the plain language will be enforced. *See Progressive*, 2002 WL 1558382, at *7. Moreover, Silgan's CERCLA claims and a contractual indemnity claim are legally distinct causes of action, which, absent some agreement to the contrary, are each legally cognizable in their own right.[21] *See Horsehead*, 258 F.3d at 143; *E.I. Dupont*, 508 F.3d at 135 (citing *United*

---

[21]

 With respect to Silgan's CERLCA claims for cost recovery and contribution, as the Supreme Court recognized in *United States v. Atlantic Research Corp.*,

... §§ 107(a) and 113(f) provide two "clearly distinct" remedies.

[*Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 163, n. 3 (2004)]. "CERCLA provide[s] for a *right to cost recovery* in certain circumstances, § 107(a), and *separate rights to contribution* in other circumstances, §§ 113(f)(1), 113(f)(3)(B)." *Id.*, at 163, 125 S.Ct. 577 (emphases added).

...

Section 113(f) explicitly grants [potentially responsible parties ("PRPs")] a right to contribution. Contribution is defined as the "tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault." BLACK'S LAW DICTIONARY 353 (8th ed.1999). Nothing in § 113(f) suggests that Congress used the term "contribution" in anything other than this traditional sense. The statute authorizes a PRP to seek contribution "during or following" a suit under § 106 or § 107(a). 42 U.S.C. § 9613(f)(1). Thus, § 113(f)(1) permits suit before or after the establishment of common liability. In either case, a PRP's right to contribution under § 113(f)(1) is contingent upon an inequitable distribution of common liability among liable parties.

...

By contrast, § 107(a) permits recovery of cleanup costs but does not create a right to contribution. A private party may recover under § 107(a) without any establishment of liability to a third party. Moreover, § 107(a) permits a PRP to recover only the costs it has "incurred" in cleaning up a site. 42 U.S.C. § 9607(a)(4)(B). When a party pays to satisfy a settlement agreement or a court judgment, it does not incur its own costs of response. Rather, it reimburses other parties for costs that those parties incurred.

Accordingly, the remedies available in §§ 107(a) and 113(f) complement each other by providing causes of action "to persons in different procedural circumstances." [*Consolidated Edison Co. of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90, 99 (2nd Cir. 2005)]; *see also* [*E.I. DuPont de Nemours and Co. v. United States*, 460 F.3d 515, 548 (3d Cir. 2006)] (Sloviter, J., dissenting). Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of

*States v. Atlantic Research Corp.*, 127 S.Ct. 2331, 2339 (2007)(under CERCLA a potentially responsible party "may bring a cause of action for cost recovery under § 107 and need not rely upon § 113 as its exclusive remedy"). Accordingly, the Court finds that the provisions cited by Alcoa do not create an exclusive remedy of indemnification which bar Silgan's CERCLA claims in this action.

Finally, the law of the case doctrine does not require that Judge McKinney's decision transferring this action under the forum selection clause of the Agreement apply to bar Silgan's CERCLA claims. "The law of the case doctrine 'limits relitigation of an issue once it has been decided' in an earlier stage of the same litigation." *Hamilton v. Leavy*, 322 F.3d 776, 786-87 (3d Cir. 2003)(quoting *In re Continental Airlines, Inc.*, 279 F.3d 226, 232 (3d Cir.2002)). In rendering his decision, Judge McKinney held that forum selection clauses are given broad construction and that Silgan's CERCLA claims sufficiently "arise out of or relate to" the Agreement to permit the enforcement of an otherwise valid forum selection clause. (Docket No. 54 at 5-6). The Court further held that "'any dispute between the contacting parties that is in any way connected with their contract could be said to "arise out of" their agreement ...'" (Docket No. 54 at 5 (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l*, 1 F.3d 639, 642-43 (7th Cir. 1993)). While Judge McKinney found that the facts underlying Silgan's CERCLA claims "are the same as those that

---

> response and therefore cannot recover under § 107(a). As a result,
> though eligible to seek contribution under § 113(f)(1), the PRP cannot
> simultaneously seek to recover the same expenses under § 107(a).

*Atlantic Research*, 551 U.S. 128, 127 S.Ct. at 2338; *see also E.I. DuPont*, 508 F.3d 126, 134-35 (quoting same). The Court notes that the only issue presently before the Court in Alcoa's motion to dismiss is whether the indemnification clause in the Agreement bars Silgan's CERCLA claims. Although the parties' arguments briefly address whether Silgan has properly alleged a claim to recover voluntary response costs under section 107(a) and *Atlantic Research*, Alcoa's motion to dismiss does not rely on this argument; therefore, the Court declines to opine further as to same at this stage of the proceedings. (*See* Docket No. 86).

would give rise to an indemnification action on the Agreement," he did not resolve the issues presently before this Court regarding whether the indemnification clause operates as a bar to Silgan's claims and, thus, the law of the case doctrine is not applicable.

V.   POTENTIAL ABSTENTION OR STAY OF THIS MATTER DUE TO THE PARALLEL STATE ACTION

During oral argument, the Court directed the parties to submit supplemental briefs addressing whether the Court should either abstain from exercising jurisdiction over this action or stay these proceedings given the pending action in the Court of Common Pleas of Allegheny County. (Docket Nos. 78, 89). In their respective briefs, both parties assert that this Court should neither abstain from exercising jurisdiction over this action nor stay the proceedings prior to the resolution of Alcoa's motion to dismiss. (Docket Nos. 85, 86). Given that this Court has exclusive jurisdiction over Silgan's CERCLA claims pursuant to 42 U.S.C. § 9613(b),[22] and the fact that the state court action is currently in discovery and there are no motions pending before the state court, the Court agrees with the parties' analysis that it would be improper for the Court to either abstain or stay this matter due to the pending state court action at this time. *See e.g., Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818-20 (1976); *IFC Interconsult, AG v. Safeguard Intern. Partners,*

---

[22] 42 U.S.C. § 9613(b) provides, in pertinent part, that:

> (b) Jurisdiction; venue
>
> Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy.

42 U.S.C. § 9613(b).

*LLC*., 438 F.3d 298, 305 (3d Cir. 2006)(summarizing the legal standards of abstention under *Colorado River*, *Younger* and *Buford*). Moreover, similar considerations prevent this Court from declining jurisdiction over Silgan's declaratory judgment action. *See United States v. Pa. Dept. of Envtl. Res.*, 923 F.2d 1071, 1075-76 (3rd Cir. 1991). Accordingly, this case should proceed through discovery. However, given the related nature of the parties' claims in both courts regarding the interpretation of the indemnity provisions in the Agreement, a stay may be appropriate at some point in the future and may require the Court to revisit the issue.[23]

VI.    CONCLUSION

Based on the foregoing, Alcoa's motion to dismiss is DENIED. An appropriate Order follows.


                                        *s/ Nora Barry Fischer*
                                        Nora Barry Fischer
                                        United States District Judge


Dated: April 29, 2009

cc/ecf: All counsel of record.

---

[23]

The Court notes that discovery should be coordinated so as to effectuate the speedy and efficient resolution of both cases. *See* FED.R.CIV.P. 1.